UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ELAINE MICHELLE HERRON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:10-CV-121 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| G. MICHAEL LUHOWIAK, Administrator | ) | |
| ad litem for WILLIAM H. GILBERT, | ) | |
| deceased, LARRY D. CRANE, individually | ) | |
| and doing business as C&C MOTORS, and | ) | |
| CHATTANOOGA AUTO AUCTION, LLC, | ) | |
| a/k/a CAA LIQUIDATION, LLC, doing | ) | |
| business as CHATTANOOGA AUTO | ) | |
| AUCTION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant Larry Crane, individually and doing business as C&C Motors ("Defendant") (Court File No. 52). Plaintiff Elaine Michelle Herron ("Plaintiff") submitted a response (Court File No. 58) and Defendant submitted a reply (Court File No. 60). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 52). The case will proceed with respect to all other defendants in this case.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2009, Defendant purchased a 2001 GMC Yukon sport utility vehicle from Carl Gregory Ford, a car dealership in Fort Payne, Alabama (Court File No. 58-1; Court File No. 53-1

("Crane Dep."), at 47).[1] Defendant drove from Chattanooga, Tennessee to Fort Payne, Alabama to pick up the vehicle. During the sixty-mile return trip, Defendant observed that the Yukon had "weaker brakes than a normal [vehicle] would" and that the brakes were "harder to mash" (Crane Dep. at 48-49).

When Defendant arrived back in Chattanooga, he drove the vehicle directly to Chattanooga Auto Auction (*id.* at 51). Upon arrival, he observed that "[t]he sale was closed" and there was "no one at the [check-in] shack" (*id.* at 49). Defendant then approached the night watchman at a different shack located ahead of the check-in shack. He asked the watchman to write on the driver's side window that the vehicle had "weak brakes" (*id.* at 50).

According to Margaret Galloway Howard, a general manager of Chattanooga Auto Auction around the time of the incident, there is a procedure for checking-in vehicles with mechanical problems that have been dropped off by dealers. The vehicle should be pulled up to the proper check-in lane, notations should be made on the window to identify the vehicle and its owner, and the keys should be taken out of the vehicle (Court File No. 60-3 ("Howard Dep."), at 15, 31-32). A note is also typically placed on the desk of the lot manager about the vehicle (*id.* at 39). If the car comes in after normal business hours, the dealer would not be able to pull the vehicle up as far and would have to tell the security guard about the mechanical problem (*id.* at 40). Ms. Howard contends that Chattanooga Auto Auction is then responsible for making sure the notation about the mechanical problem is written on the window as well as moving the vehicle off to the side and taking the keys out (*id.* at 41). Security performs these tasks after hours (*id.* at 40-41). According

---

[1] Both parties cite to parts of Defendant's deposition in Court File No. 53-1 and Court File No. 58-1. To minimize confusion, the deposition will be cited to generally as "Crane Dep."

2

to Ms. Howard, "once the car is in our possession, it's our responsibility" (*id.* at 41).

Ms. Howard also explained that Chattanooga Auto Auction has a color-coded system for selling its vehicles (Howard Dep. at 47). Among others, the green light means "ride and drive," and the vehicle is without defect (*id.* at 47). This means the vehicle can be placed on the front row to sell at the auction (*id.* at 47). Yellow light means "caution" and that something has been announced about the vehicle that the potential buyer should inquire about (*id.* at 47). Red light means the vehicle probably has a mechanical problem, and the buyer must purchase the vehicle "as is" (*id.* at 47). Ms. Howard contends that the color classification is "according to [how] the dealer represents his car" and it is "strictly up to the dealer" to tell the auctioneer which light he wants to run it under (*id.* at 48). At the same time, Ms. Howard states the following with respect to how the auction handles a vehicle that has a mechanical defect or poses a safety issue: "[I]t's supposed to go on a rollback. I mean, that's not the dealer's call. He can't say I'm going to sell this as is and I want you to drive. It's got bad brakes. That's not how that works" (*id.* at 54). A "rollback" is a wrecker truck that the auctioned vehicle can be placed upon and then driven through the auction block (*see id.* at 54).

On May 2 and May 5, 2009, Defendant's Yukon was offered for sale at the Chattanooga Auto Auction (Crane Dep. at 51; Court File No. 58-3). The vehicle did not sell on either date. The Yukon was offered for sale again on May 12. On that date, the vehicle was being driven by co-defendant William Gilbert, a part-time worker employed through Emplace Staffing, which is a temporary employment agency in Chattanooga (Court File No. 53-2 ("Quick Dep.") at 30). According to Lisa Quick, a former Chattanooga Auto Auction employee in human resources, the drivers were hired by Chattanooga Auto Auction and exclusively worked part-time (*id.* at 28).

3

Defendant did not know and had never spoken to Mr. Gilbert (Crane Dep. at 62). Moreover, he had no input on who Chattanooga Auto Auction selected to drive his vehicle (*id.* at 65). Plaintiff Elaine Herron was at Chattanooga Auto Auction on May 12 and was struck by Defendant's vehicle, which was being driven by Mr. Gilbert (*id.* at 65). The Yukon was not on a rollback (Howard Dep. at 60). Defendant's vehicle remained on the property of Chattanooga Auto Auction from May 2 until June 2, 2009 (Quick Dep. at 103).

On May 11, 2010, Plaintiff filed this action against Defendants Larry Crane, individually and doing business as C&C Motors; William H. Gilbert; and Chattanooga Auto Auction, LLC, a/k/a CAA Liquidation, LLC, doing business as Chattanooga Auto Auction.[2] Plaintiff filed an amended complaint on July 20, 2010 and a second amended complaint on September 16, 2010.[3] In Count One, Plaintiff alleges Defendants were negligent (Court File No. 1 ¶¶ 12-13). In Count Three, Plaintiff alleges Defendants' conduct caused "pre-impact terror," or resulted in the negligent infliction of emotional distress (Court File No. 1 ¶¶ 14-15).[4] Plaintiff seeks compensatory, punitive, and exemplary damages (Court File No. 1 ¶¶ 16-17). The trial and scheduling order dates have been continued twice–the first time to allow for mediation between the parties and the second time to accommodate Plaintiff's health problems stemming from the accident. Pending before the Court is Defendant Crane's motion for summary judgment.

---

[2] Since the filing of this action, G. Michael Luhowiak, Administrator ad litem for William H. Gilbert, deceased, has been substituted as a defendant for and in place of William H. Gilbert.

[3] Because the first and second amended complaint both incorporate all prior versions, the Court will refer to all of the pleadings filed by Plaintiff in tandem as "the complaint," unless otherwise indicated.

[4] "Count Two" is not mentioned in any version of the complaint.

4

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment.

5

*Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

### A. Count One: Negligence

Defendant seeks dismissal of Count One because he contends that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Defendant argues that only two vague allegations were lodged against him in the complaint. The first was that either Defendant or co-defendant Chattanooga Auto Auction employed co-defendant Gilbert, the driver of the vehicle at the time of the accident. The second was that Defendant owned the vehicle that was involved in the accident. Defendant seeks dismissal because he contends that he cannot be found negligent on these facts alone, especially since Gilbert was not Defendant's employee. Defendant also argues that being the owner of the vehicle is insufficient in this case to establish liability. In particular, Defendant notes that he had a bailor–bailee relationship with Chattanooga Auto Auction. Therefore, Chattanooga Auto Auction, as bailee, would be liable for Gilbert's alleged negligence, not Defendant.

In response, Plaintiff contends summary judgment is inappropriate because genuine issues of material fact exist with respect to whether Defendant is independently negligent and whether Defendant is vicariously liable for Gilbert's negligence. The Court notes at the outset, however, that Plaintiff asserts legal theories of liability in her brief that were either not originally asserted or clearly alleged in the complaint or any of its amended forms. For example, Plaintiff now contends Defendant is independently negligent because the brakes on Defendant's vehicle were defective and contributed to the collision involving Plaintiff. Plaintiff also claims Defendant violated Tenn. Code

6

Ann. § 55-9-205 for failing to maintain the brakes of the Yukon in "good working order." Nowhere in the complaint, however, does Plaintiff raise this theory of negligence or assert this statutory violation. Moreover, Plaintiff failed to include any facts pertaining to the vehicle's brakes to properly apprise Defendant of Plaintiff's theories of liability.

The Court need not consider Plaintiff's newly asserted legal theories, especially the statutory violation that Plaintiff failed to plead, because the complaint was never amended to incorporate these changes. With that said, the Court will briefly address Plaintiff's argument that Defendant was independently negligent to demonstrate that, even if the complaint had been amended, no genuine issue of material fact remains. The Court will also discuss Plaintiff's alternative argument that Defendant is vicariously liable for co-defendant Gilbert's negligence as the owner of the vehicle.

**1. Negligence**

First, Plaintiff has not shown a genuine issue of material fact exists with respect to her independent negligence claim. Plaintiff argues Defendant is liable because the brakes in Defendant's vehicle were defective and the brake problem contributed to the collision that injured Plaintiff. Without regard to even a "contract for bailment," every person has a duty to "refrain from acts of omission or commission which he may reasonably expect would result in injury to third persons." *See Vaughn v. Millington Motor Co.*, 22 S.W.2d 226, 227 (Tenn. 1929). In *Vaughn*, the defendant motor company rented a truck to Mr. Sigler, the bailee, which Mr. Sigler used on his farm. *Id.* at 226. The brakes and the horn in the vehicle were defective. At the time of the accident, one of Mr. Sigler's employees accidentally backed the truck into a crowd of berry pickers assembled by a barn on Mr. Sigler's premises. *Id.* The trial court determined that the pleadings failed to establish that the defendant, a bailor for hire, was liable for the injuries sustained by the third-party plaintiff whose

7

injuries were caused by defects in a truck operated by the bailee. In reversing the trial court's decision, the Tennessee Supreme Court observed that "if the bailor knows or by reasonable diligence could know of defects in devices intended to control them, an obligation rests upon him not to let the machine without correcting the defect, or without notifying the bailee and contracting with him to make the machine safe before using it in public." *Id.* at 227.

Here, even assuming Defendant was a bailor under the circumstances, he had a duty to "refrain from acts of omission or commission which he may reasonably expect would result in injury to third persons." *See id.* Defendant had knowledge of the defective brakes because he admits in his deposition that he observed the Yukon had "weaker brakes than a normal [vehicle] would" and that the brakes were "harder to mash" (Crane Dep. at 48-49). It is also undisputed that Defendant did not fix the brake problem prior to the accident that involved Plaintiff. At issue, however, is whether Defendant notified Chattanooga Auto Auction of the problem and contracted with them to ensure the vehicle was safe before it was used at the auction.

Even after viewing the facts in the light most favorable to Plaintiff, the Court concludes no genuine issue of material fact remains. According to the testimony of Ms. Margaret Galloway Howard, general manager of Chattanooga Auto Auction at the time of the incident, company policy requires dealers to notify the auction of possible vehicle defects. For vehicles dropped off after hours, such as Defendant's, the dealer would have to tell the security guard about the mechanical problem (Howard Dep. at 40). The security guard then writes the notation on the vehicle's window, moves the vehicle off to the side, and takes the keys out (*See id.* at 40-41). Chattanooga Auto Auction takes responsibility for making sure these steps are performed and, in the words of Ms. Howard, "once the car is in our possession, it's our responsibility" (*id.* at 41). Based on the evidence

8

in the record, Defendant dropped his car off after hours, and he asked the night watchman to write on the driver's side window that the vehicle had "weak brakes" (Crane Dep. at 49-50). In light of Chattanooga Auto Auction's policy for handling vehicles dropped off after hours, Plaintiff has failed to show Defendant did not notify the company in accordance with its policies.

Moreover, by notifying Chattanooga Auto Auction of the brake problem, Defendant represented to Chattanooga Auto Auction that the vehicle had a defect. As explained by Ms. Howard, even if a dealer somehow requested otherwise, a vehicle with a defect or that poses a safety issue is supposed to go on a "rollback" (Howard Dep. at 54). In fact, Ms. Howard expressly stated "[T]hat's not the dealer's call. He can't say I'm going to sell this as is and I want you to drive. It's got bad brakes. That's not how that works" (*id.* at 54). Accordingly, after being notified that Defendant's vehicle had a brake problem, the vehicle should have been put on a "rollback," which is the equivalent of placing the vehicle on a wrecker truck and transporting the vehicle in a manner that would minimize the safety hazards that would otherwise exist if the vehicle was independently driven. Defendant's vehicle, however, was not placed on a rollback. Instead, it was driven by Mr. Gilbert–one of Chattanooga Auto Auction's part-time employees–in spite of Defendant's representations and contrary to Chattanooga Auto Auction policy. Although Chattanooga Auto Auction made the decision to allow Mr. Gilbert to drive the vehicle, Plaintiff has not shown Defendant failed to perform his duty under Tennessee law. Accordingly, the Court concludes Defendant was not independently negligent and Plaintiff's first theory of liability fails.

### 2. Vicarious Liability

Plaintiff also argues Defendant is vicariously liable for co-defendant Gilbert's negligence as owner of the vehicle. Defendant, however, avers that ownership alone is insufficient to establish

9

Case 1:10-cv-00121-CLC-SKL Document 70 Filed 09/25/12 Page 9 of 13 PageID #: 297

liability, especially given that Defendant had a bailor–bailee relationship with Chattanooga Auto Auction and Mr. Gilbert was not Defendant's employee. For the following reasons, the Court agrees with Defendant that summary judgment is appropriate on this claim.

Plaintiff relies upon Tenn. Code Ann. § 55-10-311 to demonstrate that she has set forth a prima facie case for vicarious liability. Section 55-10-311 of the Tennessee Code provides as follows:

> In all actions for injury to persons and/or property caused by the negligent operation or use of any automobile, auto truck, . . . or other motor propelled vehicle within this state, proof of ownership of the vehicle shall be prima facie evidence that the vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which the injury or cause of action arose, and the proof of ownership likewise shall be prima facie evidence that the vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and scope of the servant's employment. . . .

Tenn. Code Ann. § 55-10-311. As a preliminary matter, § 55-10-311 does not create a cause of action. Instead, it merely explains what constitutes "prima facie evidence of an agency relationship between the owner and driver." *Stein v. Sparks*, No. 1:08-CV-142, 2009 WL 5066661, at *2 (E.D. Tenn. Dec. 16, 2009). Moreover, under Tennessee law, the general rule is that if the plaintiff can establish proof of ownership, that is "sufficient to overcome a motion for summary judgment as well as a motion for directed verdict at the close of the plaintiff's proof." *Hamrick v. Spring City Motor Co.*, 708 S.W.3d 383, 385 (Tenn. 1986); *see also Godfrey v. Ruiz*, 90 S.W.3d 692, 695-96 (Tenn. 2002). In *Godfrey*, however, the Tennessee Supreme Court highlighted some of its previous decisions in which it noted there may be situations where summary judgment is appropriate. The court expressed that it would "preserve the possibility that courts may grant summary judgment or a directed verdict on behalf of a vehicle's owner in a negligence case if the owner has provided

10

evidence other than his own testimony that the driver was not acting as the owner's agent when the accident occurred." 90 S.W.3d at 696.

It is undisputed that Defendant is the owner of the Yukon that was involved in the accident. Under Tennessee law, this would ordinarily be sufficient to overcome Defendant's motion for summary judgment, especially if the only evidence in the record was Defendant's averments that he was not liable because Mr. Gilbert was not his agent or employee. Here, Defendant states that he did not know Mr. Gilbert and had never spoken to Mr. Gilbert (Crane Dep. at 62). He further contends he had no input on who Chattanooga Auto Auction selected to drive his vehicle (*id.* at 65).

However, also in the record is deposition testimony from Lisa Quick, a former Chattanooga Auto Auction employee who worked in human resources. According to Ms. Quick, Mr. Gilbert was a part-time worker employed through Emplace Staffing, which is a temporary employment agency in Chattanooga (Quick Dep. at 30). All drivers were hired by Chattanooga Auto Auction and exclusively worked for the auction part-time (*id.* at 28). Ms. Quick's testimony further demonstrates that Mr. Gilbert worked for Chattanooga Auto Auction and that Defendant had no control over Mr. Gilbert. Mr. Gilbert was not Defendant's employee or agent. Moreover, even viewing the facts in the light most favorable to Plaintiff, the evidence shows, at most, Defendant was the bailor and Chattanooga Auto Auction was the bailee. Hence, to the extent Mr. Gilbert was negligent, Chattanooga Auto Auction might also be liable for his negligence, but Defendant would not be. *See Stein*, 2009 WL 5066661, at *4 (noting Tennessee law "restricts imputed liability to parties who have control over the actions of the negligent party, as through an agency relationship"). In the absence of any evidence on the record establishing that Mr. Gilbert was Defendant's employee or agent, the Court concludes summary judgment must be granted on this theory of liability.

### B.     Count Three: Negligent Infliction of Emotional Distress

In Count Three, Plaintiff asserts a cause of action for "pre-impact terror." Plaintiff contends that due to Defendant's "carelessness and negligence," he–along with the other defendants, their employees, and agents–"caused the crash to occur, and proximately caused severe emotional distress and fear by [Plaintiff] prior to the crash" (Compl. ¶¶ 14-15). Based on these allegations, the Court will construe Count Three to assert a claim of negligent infliction of emotional distress. Under Tennessee law, to bring a claim of negligent infliction of emotional distress, the plaintiff must show (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant that breaches this duty, (3) serious or severe emotional injury, (4) a cause-in-fact connection between the plaintiff's emotional injury and the defendant's conduct, and (5) the existence of proximate or legal cause. *See Eskin v. Bartee*, 262 S.W.3d 727, 735 & n.19 (Tenn. 2008); *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). As noted previously, Plaintiff has failed to show a genuine issue of material fact exists with respect to her claim that Defendant was negligent or liable for the alleged negligence of co-defendant Gilbert. Accordingly, because Plaintiff has not shown Defendant breached a duty of care owed to Plaintiff, Count Three must also fail. The Court will grant summary judgment with respect to Count Three.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be **GRANTED** (Court File No. 52).

An Order shall enter.

12

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**